**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LISA MONTGOMERY,

                Plaintiff,

     v.                          No. 1:20-cv-03214-TNM

WILLIAM P. BARR, et al.,

                Defendants.

**MOTION TO REASSIGN CASE UNDER 28 U.S.C. § 455(a), AND FOR DISCLOSURE**
**OF EVIDENCE RELEVANT TO THIS MOTION**

## TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................. 1

ARGUMENT ...................................................................................................... 6

I.  DISQUALIFICATION IS REQUIRED BECAUSE JUDGE MCFADDEN'S
    IMPARTIALITY MIGHT REASONABLY BE QUESTIONED, GIVEN HIS
    PROMINENT LEADERSHIP IN THE PART OF DOJ RESPONSIBLE BOTH
    FOR RESUMPTION OF FEDERAL EXECUTIONS AND FOR OPPOSING
    PLAINTIFF'S POSTCONVICTION MOTIONS ATTACKING HER DEATH
    SENTENCE. ................................................................................................ 6

II. DISCLOSURE OF INFORMATION WITHIN THE COURT'S POSSESSION
    RELEVANT TO DISQUALIFICATION IS REQUIRED IF
    DISQUALIFICATION IS NOT IMMEDIATELY GRANTED. .................................... 11

CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Primerica Holdings, Inc.*,
  10 F.3d 155 (3d Cir. 1993)...........................................................................................................9

*Am. Textile Mfrs. Inst., Inc. v. Ltd.*,
  190 F.3d 729 (6th Cir. 1999) ......................................................................................................11

*In re Cont'l Airlines Corp.*,
  901 F.2d 1259 (5th Cir. 1990) ......................................................................................................9

*Gregg v. Georgia*,
  428 U.S. 153 (1976)......................................................................................................................7

*In re Hatcher*,
  150 F.3d 631 (7th Cir. 1998) ........................................................................................................9

*Liteky v. United States*,
  510 U.S. 540 (1994)......................................................................................................................9

*Montgomery v. United States*,
  12-08001-CV-W-GAF (March 3, 2017)........................................................................................2

*Montgomery v. United States*,
  No. 17-1716 (8th Cir. Jan. 25. 2019), *cert. denied*, 140 S. Ct. 2820 (May 26,
  2020) ..............................................................................................................................................2

*In re Murchison*,
  349 U.S. 133 (1955)......................................................................................................................9

*Porter v. Singletary*,
  49 F.3d 1483 (11th Cir. 1995) ....................................................................................................11

*Potashnick v. Port City Constr. Co.*,
  609 F.2d 1101 (5th Cir. 1980) ....................................................................................................11

*Roane v. Holder*,
  05-cv-023337-TSC (D.D.C), D.E. # 364 (Status Report of April 18, 2016)...........................4

*In re School Asbestos Litigation*,
  977 F.2d 764 (3d Cir. 1992)..........................................................................................................9

*In re Third Party Subpoena to Fusion GPS*,
  292 F. Supp. 3d 307 (D.D.C. 2018).............................................................................................10

*United States v. Montgomery*,
   635 F.3d 1074 (8th Cir. 2011), *cert denied* 132 S. Ct. 1741 (2012)...........................................2

*United States v. Pattie*,
   337 F.3d 1317 (11th Cir. 2003) .................................................................................................9

*United States v. Sells Engineering, Inc.*,
   463 U.S. 418 (1983) (Burger, C.J., dissenting) ........................................................................6

*Williams v. Pennsylvania*,
   136 S. Ct. 1899 (2016)...........................................................................................................8, 11

**Statutes**

28 U.S.C. § 455............................................................................................................... *passim*

28 U.S.C. § 2255 ...........................................................................................................................2

**Other Authorities**

Death Penalty Information Center, List of Federal Death-Row Prisoners,
   https://deathpenaltyinfo.org/state-and-federal-info/federal-death-penalty/list-
   of-federal-death-row-prisoners ...........................................................................................5, 6

DOJ, *Capital Case Section*, https://www.justice.gov/criminal/capital-case-section ...........3, 4, 6, 8

DOJ Release, *Federal Government to Resume Capital Punishment After Nearly
   Two Decade Lapse* (July 25, 2019), https://www.justice.gov/opa/pr/federal-
   government-resume-capital-punishment-after-nearly-two-decade-lapse ................................5

Federal Bureau of Prisons, *About Our Agency*,
   https://www.bop.gov/about/agency/ ..........................................................................................6

Federal Bureau of Prisons, *Historical Information Capital Punishment*,
   https://www.bop.gov/about/history/federal_executions.jsp.......................................................4

Federal Judicial Center, *Judicial Disqualification: An Analysis of Federal Law*
   (3d ed. 2020) ...........................................................................................................................10

Kimberly Atkins, *Executions may restart under Trump death row includes
   Tsarnaev*, BOSTON HERALD 4 (Dec. 26, 2016) 2016 WLNR 39503625 ..................................4

*Special Report: How the Trump Administration secured a secret supply of
   execution drugs*, REUTERS, July 20, 2020, https://www.reuters.com/article/us-
   usa-executions-specialreport/special-report-how-the-trump-administration-
   secured-a-secret-supply-of-execution-drugs-idUSKBN24B1E4................................................5

Trevor McFadden, *United States Senate Committee on the Judiciary,*
   *Questionnaire for Judicial Nominees,*
   https://www.judiciary.senate.gov/imo/media/doc/SJQ_.......................................................2, 3

Plaintiff Lisa Montgomery hereby moves, under 28 U.S.C. § 455 and the Fifth Amendment to the United States Constitution, for an order disqualifying and recusing the Honorable Trevor N. McFadden from further participation in this case. Judge McFadden was second-in-command at the Criminal Division of the Department of Justice about three years ago, at a time when the government was both planning resumption of federal executions and defending against Plaintiff's federal habeas petition seeking relief from execution. Given his strong connection to the Defendants, oversight of the attorneys involved in Plaintiff's case, and his likely involvement in developing the protocols at issue in this case, any observer would reasonably question his impartiality in this lawsuit. To the extent that the Court does not immediately grant this motion, Plaintiff respectfully requests that Judge McFadden abide by his obligations, set out below, to disclose any and all information that could give rise to questions about his impartiality in this execution-related lawsuit. Plaintiff has met and conferred with counsel for the Defendants, who oppose this motion.

## Background

Plaintiff Lisa Montgomery is a federal death-row prisoner. Her complaint challenges the conditions under which the Defendants are confining her, and will confine her, leading up to her execution scheduled for December 8, 2020. At issue in this lawsuit are, among other things, the policies and protocols that govern, or ought to govern, her confinement in advance of her execution, and where, as a woman, she will be executed, including the Bureau of Prison's Execution Manual, its Female Offender Manual, its Suicide Prevention Program, ECF No. 1, ¶¶ 71-75, 90-92, and the Bureau of Prison's current execution protocol, which is not a publicly-available document.

1

Mrs. Montgomery's capital crime occurred in 2004, and she was convicted and sentenced to death in 2007. She filed her direct appeal in 2008, which concluded in 2012. *See generally United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011), *cert denied* 132 S. Ct. 1741 (2012). Thereafter, in March of 2013, Mrs. Montgomery challenged her conviction and death sentence under 28 U.S.C. § 2255, and the District Court denied relief. *See* Order, *Montgomery v. United States*, 12-08001-CV-W-GAF (March 3, 2017). Mrs. Montgomery then sought a certificate of appealability from the United States Circuit Court for the Eighth Circuit, ultimately unsuccessfully. *See* Order, *Montgomery v. United States*, No. 17-1716 (8th Cir. Jan. 25. 2019), *cert. denied*, 140 S. Ct. 2820 (May 26, 2020).

Prior to taking the bench in late 2017, Judge McFadden worked the majority of his legal career for the United States Department of Justice (DOJ), culminating in early 2017, in a top leadership post within the Criminal Division, under the then new Attorney General, Jeff Sessions. *See generally* Trevor McFadden, *United States Senate Committee on the Judiciary, Questionnaire for Judicial Nominees,* https://www.judiciary.senate.gov/imo/media/doc/SJQ_Trevor%20McFadden.pdf.

Judge McFadden's titles within the Criminal Division in 2017 were Acting Principal Deputy Assistant Attorney General and Deputy Assistant Attorney General. *Id.* at 2. He has described his position as the second-in-command in the Criminal Division, a position with significant responsibilities. *Id.* at 19-20. More specifically, he stated:

> I am the second-in-command of the Department of Justice's Criminal Division, which is charged with enforcing many of the Nation's most significant and complex criminal laws. I am responsible for overseeing several hundred federal prosecutors who investigate and try white-collar fraud and corruption cases, cyber and child exploitation cases, transnational gang and narcotics conspiracies, and numerous other criminal matters. I regularly advise the Department's senior leaders and help set prosecutorial policy for federal prosecutors.

*Id.* Judge McFadden's biography on this Court's website notes that he "managed the Division's Fraud and Appellate Sections." United States District Court District of Columbia, *District Judge Trevor N. McFadden*, https://www.dcd.uscourts.gov/content/district-judge-trevor-n-mcfadden.

As the second-in-command of the Criminal Division in 2017, Judge McFadden, on information and belief, necessarily oversaw the Capital Case Section (CCS) of the Department of Justice and was a member of the CCS Committee. The DOJ created the CCS "in response to the Department's increased involvement in capital litigation and charged [it] with overseeing the Department's capital prosecutions." DOJ, *Capital Case Section*, https://www.justice.gov/criminal/capital-case-section. The CCS plays an active role in federal death cases from their inception (when the appropriateness of the death penalty is being considered) through trial, appeal, and post-conviction in advisory, training, and litigation capacities. Therefore, although the work of the CCS is primarily initiated at the pretrial authorization phase, the CCS retains essential oversight and offers continuing assistance to federal prosecutors at every stage of the litigation:

> The purpose of the CCS is to promote consistency and fairness in the application of the death penalty throughout the United States and to ensure that Federal prosecutors in districts throughout the country who are prosecuting capital cases have access to the expertise and resources available through the CCS attorneys and support staff.

> The CCS is primarily responsible for assisting the Attorney General's Review Committee on Capital Cases (AGRCCC) in its evaluation of capital cases submitted by United States Attorneys to the Department of Justice for review and recommendation to the Attorney General concerning the appropriateness of seeking the death penalty. The CCS conducts a preliminary analysis of all cases in which the United States Attorney charges a defendant with a crime punishable by death and advises the AGRCCC of the factual and legal issues that are relevant to the Committee's recommendation to the Attorney General whether to seek the death penalty.

> In addition to providing the expertise and analysis necessary to complete the preliminary capital review process, *CCS attorneys provide legal, procedural, and technical assistance to United States Attorneys in capital investigations and prosecutions; develop policies and procedures for Federal capital prosecutions; provide training for Federal capital litigators; draft legal memoranda and pleadings; maintain a resource library on capital issues; and provide assistance in capital trials, appeals, and post-conviction litigation.*

*Id.* (emphasis added). Judge McFadden's work as the second-in-command in the Criminal Division, overseeing CCS, corresponded with a time in which the Department of Justice was seeking to resume federal executions after what was then a fourteen-year pause,[1] and a time during which Mrs. Montgomery's post-conviction claims remained pending (as set out above).

When President Trump and Attorney General Sessions took their respective offices in 2017, the United States had not executed anyone since 2003. *See* note 1, *supra*. But both the President and the then Attorney General supported the death penalty. *See, e.g.,* Kimberly Atkins, *Executions may restart under Trump death row includes Tsarnaev*, BOSTON HERALD 4 (Dec. 26, 2016), 2016 WLNR 39503625. Since 2007, a preliminary injunction had been in place against executions for at least three federal death-row prisoners and, as of March of 2011, the DOJ was not able to obtain the drugs it needed to carry out an execution. *See Roane v. Holder*, 05-cv-023337-TSC (D.D.C), D.E. # 364 (Status Report of April 18, 2016); D.E. # 371 (Status Report of July 31, 2017). Therefore, its execution efforts had effectively stalled.

In May of 2017, only five months before Judge McFadden received his judicial commission, the DOJ began preparations to get federal executions back on track. *See* Jonathan

---

[1] At that time, the last federal execution had been in 2003, that of Louis Jones. *See* Federal Bureau of Prisons, *Historical Information Capital Punishment* (filter to 2000's), https://www.bop.gov/about/history/federal_executions.jsp.

Allen, *Special Report: How the Trump Administration secured a secret supply of execution drugs*, Reuters, July 20, 2020, https://www.reuters.com/article/us-usa-executions-specialreport/special-report-how-the-trump-administration-secured-a-secret-supply-of-execution-drugs-idUSKBN24B1E4. Indeed, in anticipation of legal challenges, DOJ hired a litigation consulting firm, Elite Medical Experts LLC. *Id.* After Judge McFadden took the bench, in July of 2019, the DOJ announced that it would resume executions and that it had adopted an Addendum to the Federal Execution Protocol. *See* DOJ Release, *Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse* (July 25, 2019), https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse. As this process was gearing up in 2017, Plaintiff was, as she remains now, the only woman federally sentenced to death and awaiting execution. *See* Death Penalty Information Center, List of Federal Death-Row Prisoners, https://deathpenaltyinfo.org/state-and-federal-info/federal-death-penalty/list-of-federal-death-row-prisoners.

On information and belief, given its critical role in federal death-penalty cases, from start to finish the CCS played an instrumental role in the DOJ's efforts to resume executions. On information and belief, part of the DOJ's efforts to get executions back on track, and to draft a new execution protocol, necessarily involved consideration of the procedures involving the execution of Plaintiff, the sole woman facing federal execution (whose postconviction petition during this period remained pending). Given his role as second-in-command and supervisor of the Capital Crimes Section, in 2017, Judge McFadden was thus necessarily supervising CCS's important work in this regard.

<u>**Argument**</u>

I.     **Disqualification is required because Judge McFadden's impartiality might reasonably be questioned, given his prominent leadership in the part of DOJ responsible both for resumption of federal executions and for opposing Plaintiff's postconviction motions attacking her death sentence.**

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). As shown below, disqualification is required under this provision. Mrs. Montgomery's due process rights under the Fifth Amendment to the U.S. Constitution similarly require disqualification.

To begin, Judge McFadden's "impartiality might reasonably be questioned" due to his leadership position within DOJ, overseeing the CCS at a time when the DOJ was planning to resume executions and as Mrs. Montgomery's postconviction petition remained pending. 28 U.S.C. § 455(a).

In 2017, Judge McFadden was overseeing CCS, which in turn was charged with: "promot[ing] consistency and fairness in the application of the death penalty throughout the United States. . . ." DOJ, *Capital Case Section*, https://www.justice.gov/criminal/capital-case-section. CCS was also charged with providing "expertise and resources" to federal prosecutors throughout the country, "develop[ing] policies and procedures for Federal capital prosecutions[,]" "and provid[ing] assistance in capital . . . post-conviction litigation." *Id.* The CCS work is unique within the DOJ. While the DOJ prosecutes thousands of offenders every year, and may be the world's "largest law firm[,]" *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 471 (1983) (Burger, C.J., dissenting), and the Bureau of Prisons is responsible for the care and custody of over 150,000 prisoners, Federal Bureau of Prisons, *About Our Agency*, https://www.bop.gov/about/agency/, only a small number of DOJ lawyers touch death penalty

cases, and few federal prisoners (only a miniscule fraction of the whole) face execution. *See*

Death Penalty Information Center, List of Federal Death-Row Prisoners,

https://deathpenaltyinfo.org/state-and-federal-info/federal-death-penalty/list-of-federal-death-row-prisoners (noting 55 federal current death-row prisoners, including Plaintiff).

Federal death-penalty cases are also amongst the highest profile cases the DOJ

prosecutes, and the executions that result are certainly the highest-profile punishments the

government metes out. And the most severe. Execution is irreversible, and the DOJ at the highest

levels, thus, pays the closest attention to these few cases. The "penalty of death is different in

kind from any other punishment imposed under our system of criminal justice." *Gregg v.*

*Georgia*, 428 U.S. 153, 188 (1976). The case of the sole woman facing execution in the United

States is singularly high profile, and unique. It therefore must have garnered the highest-level

attention.

The CCS in 2017, and Judge McFadden in his supervisory role, were necessarily making

decisions that are implicated by the issues being litigated in this proceeding. The complaint seeks

to prevent the transfer of Mrs. Montgomery to an all-male prison for her execution. It asserts,

*inter alia,* that the Defendants were at fault for *either* negligently failing to create or adjust

execution procedures and death watch protocols for her unique situation, *or* for knowingly

failing to change or create new death watch protocols and execution procedures for the only

women facing federal execution. In the 2017 DOJ and CCS conversations about resuming

executions, lawyers supervised by Judge McFadden, and perhaps the Judge himself, either did,

or did not, include a separate discussion of Plaintiff's case, to include the question of execution

protocols of the sole woman facing execution. If the discussions raised Mrs. Montgomery's

unique circumstances, but failed to produce any adjusted death watch protocols, that raises

questions about Judge McFadden's impartiality. If, on the other hand, the DOJ and CCS's discussion of execution policies did *not* involve Plaintiff, on a theory, intentionally or neglectfully, that the policies for men's executions could be used without any alteration for women, then that too would raise questions for reasonable observers about Judge McFadden's impartiality in this suit.

Thus, the current challenge before the Court cannot be presided over by Judge McFadden without his impartiality being questioned by reasonable observers. 28 U.S.C. § 455(a). Regardless of whether Judge McFadden and other federal prosecutors decided that Plaintiff could be executed at Terre Haute (as well the conditions women would face before their execution), or failed to address these questions out of inattention or intentionally, the risk arises that "the judge 'would be so psychologically wedded' to his or her previous position as a prosecutor that the judge 'would consciously or unconsciously avoid the appearance of having erred or changed position.'" *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1906 (2016) (quoting *Withrow v. Larkin*, 42 U.S. 35, 57 (1975)).

More generally, Judge McFadden's supervisory role over CCS at the time when significant attention was being paid to the execution procedures and death watch protocols raises an appearance of bias that that calls for his recusal. Did the unit pause to consider whether continuing to seek the execution of Mrs. Montgomery promoted "consistency and fairness in the application of the death penalty throughout the United States"? DOJ, *Capital Case Section*, https://www.justice.gov/criminal/capital-case-section. Concluding the answer was "Yes," did CCS work to defend Mrs. Montgomery's death sentence against her postconviction attack? *See id.* (noting CCS role in assisting federal prosecutors in postconviction). Whether or not CCS directly provided assistance to Plaintiff's postconviction prosecutors, or formally evaluated her

case, CCS was the unit in DOJ that was largely responsible for the significant change from a long lull in federal executions, to the present activity. Judge McFadden's involvement in supervising and perhaps participating in that process in 2017 would certainly lead reasonable people, observing his role in this suit challenging Mrs. Montgomery's conditions before execution, to question his impartiality. 28 U.S.C. § 455(a).

Disqualification is required under § 455(a), regardless of whether there is evidence of actual bias.[2] As the Supreme Court has explained, "what matters is not the reality of bias or prejudice but its appearance[.]" *Liteky v. United States*, 510 U.S. 540, 548 (1994); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their best to weigh the scales of justice equally between contending parties."). The standard for recusal under § 455(a) is thus not whether impartiality actually exists, but rather, "whether the judge's impartiality could be questioned by a reasonable, well-informed observer." *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998). *Accord In re School Asbestos Litigation,* 977 F.2d 764, 782 (3d Cir. 1992) (focusing on reasonable person's perception of bias); *In re Cont'l Airlines Corp.*, 901 F.2d 1259, 1262 (5th Cir. 1990) (the test is whether "a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality"). Such doubts are manifest here. And "any doubts must be resolved in favor of recusal." *United States v. Pattie*, 337 F.3d 1317, 1321 (11th Cir. 2003). That is particularly so where – as here in the context of resolution of Plaintiff's critical request for a preliminary injunction – the judge "is the trier of fact." *Alexander v. Primerica Holdings, Inc.*, 10

---

[2] Similarly, the Code of Conduct for United States Judges requires recusal. Canon 3C(1) of the Code provides: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

F.3d 155, 166 (3d Cir. 1993). Given the above facts and this law, and that any doubts must be resolved in favor of recusal, disqualification is unquestionably required here.[3]

While counsel do not contend that Judge McFadden is actually biased against Plaintiff, the appearance presented by these facts would be troubling to any non-legal observer. Any such observer would find it troubling that a lawyer overseeing and/or participating with select prosecutors' legal battles to impose the severe and irrevocable punishment of execution (and the logistical battles to see the sentence carried out as the DOJ made efforts to resume executions) would then preside over a case challenging the conditions of her confinement leading up to that execution.

Finally, in addition to the federal statutory grounds for Judge McFadden's mandatory disqualification, CCS's 2017 work to ensure Plaintiff's execution (again work which must have

---

[3] Plaintiff does not argue for disqualification under § 455(b)(3), which would require showing that, in his DOJ work, Judge McFadden "participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy[.]" That provision plainly does not apply here, for this particular "proceeding" did not exist in 2017. Although the Court has noted that a "litigant cannot claim that § 455(a)'s catchall provision requires disqualification where § 455(b) addresses the scenario and does not require disqualification[,]" *In re Third Party Subpoena to Fusion GPS*, 292 F. Supp. 3d 307, 309 (D.D.C. 2018), that reasoning does not apply here because § 455(b) *does not* address the scenario here. Judge McFadden's capital work in CCS, involving Plaintiff's case, again was significant but not in this proceeding. The appearance of impropriety or bias reasonable persons would observe here, under § 455(a) and shown above, does not depend on Plaintiff also (and redundantly) prevailing under § 455(b). The question simply goes back to the totality of the circumstances stemming from the prior work that could lead a reasonable person to question his current partiality. *See*, *e.g.*, Federal Judicial Center, *Judicial Disqualification: An Analysis of Federal Law* (3d ed. 2020) ("Any circumstance in which a judge's impartiality might reasonably be questioned under § 455(a) requires disqualification, even if the circumstance is not enumerated in § 455(b)[.]"). Only when the particular situation at issue is covered by § 455(b) does that section control. *Id.* (noting that while a fourth-degree relationship, insufficient for disqualification under § 455(b)(5), does not "*by itself*" require disqualification under § 455(a), disqualification "might still be appropriate if, for example, the judge's personal relationship with the fourth-degree relative was so close as to call the judge's impartiality into question"). For the reasons described in the text above, disqualification here remains required under § 455(a).

included DOJ top criminal brass such as Judge McFadden) gives rise to an unacceptable risk of bias in this execution-related case, and thus so endangers the appearance of neutrality that his participation in the case would violate Mrs. Montgomery's due-process rights under the Fifth Amendment. *See Williams*, 136 S. Ct. at 1908-09.

## II.     Disclosure of information within the Court's possession relevant to disqualification is required if disqualification is not immediately granted.

The Code of Conduct for United States Judges places an affirmative duty on this Court to disclose any and all information relevant to the issue of impartiality.

> In light of the Canons governing judicial conduct, we do not believe that an attorney conducting a reasonable investigation would consider it appropriate to question a judge, or the court personnel in the judge's court, about the judge's lack of impartiality. Canon 3E(1) requires a judge to sua sponte disqualify himself if his impartiality might reasonably be questioned. The Commentary to Canon 3E(1) *provides that a judge should disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification*. We conclude that both litigants and attorneys should be able to rely upon judges to comply with their own Canons of Ethics. A contrary rule would presume that litigants and counsel cannot rely upon an unbiased judiciary, and that counsel . . . must investigate the impartiality of the judges before whom they appear. Such investigations, of course, would undermine public confidence in the judiciary and hinder, if not disrupt, the judicial process—all to the detriment of the fair administration of justice.

*Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995) (footnotes omitted) (emphasis added).[4] *Accord Am. Textile Mfrs. Inst., Inc. v. Ltd*., Inc., 190 F.3d 729, 742 (6th Cir. 1999); *cf. Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1114-15 (5th Cir. 1980) (non-disclosure of relevant facts prevented waiver of recusal motion).

---

[4] Although the Code considered by the Eleventh Circuit was the Florida Code of Judicial Conduct, the particular provisions at issue are effectively identical to the federal code.

Plaintiff expects, based on the argument above, § 1, *supra*, that Judge McFadden will disqualify himself. If he does so, then the request here for disclosure would be moot, and Plaintiff would withdraw it. But in the event that the Court is disposed to deny the disqualification motion, or wants to consider it further at a hearing, in briefing, or at oral argument, disclosure should be granted so that all of the relevant facts may be available, presented by the parties, and considered in full by the Court and any reviewing court.

In particular, Plaintiff seeks disclosure of any and all instances in which:

1. Judge McFadden, when a DOJ official (or otherwise) discussed Plaintiff's capital case (inclusive of trial, appeals, appropriate sentence, settlement, her pending execution, or any other matter);

2. Judge McFadden offered advice on handling of Plaintiff's capital case (as defined above);

3. Judge McFadden discussed or participated in discussions regarding the resumption of federal executions in 2017, including but not limited to the protocol, the drugs to be obtained and/or used, death watch procedures and the location at which executions would take place;

4. Judge McFadden discussed or participated in discussions regarding the conditions of confinement and/or execution (as defined above) of women prisoners facing federal execution;

5. Judge McFadden was briefed on federal capital cases, including but not limited to high-profile cases.

Plaintiff further requests disclosure of any and all facts within Judge McFadden's possession that would be relevant to her contention that his impartiality could be reasonably questioned, that he has personal knowledge of facts at issue, or would be pertinent to any other statutory or

12

constitutional bases for disqualification. Again, these disclosures are only requested to the extent that Judge McFadden does not immediately disqualify himself.

## <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully submits that Judge McFadden should disqualify himself from this matter. In the alternative, if Judge McFadden does not immediately do so, Plaintiff respectfully requests disclosure of any and all bases or potential reasons a reasonable person would question his partiality in this case, and/or of any other facts relevant to whether he should be disqualified under the relevant law.

Dated:  November 16, 2020

Respectfully submitted,

By: */s/ Robin Nunn*
Robin Nunn (D.C. Bar No. 1531752)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-5382
robin.nunn@morganlewis.com

Cassandra Stubbs
Brian Stull*
Christina Hecker
Denise LeBoeuf
ACLU Capital Punishment Project
201 W. Main Street, Suite 402
Durham, NC 27705
Tel: (919) 682-5659
cstubbs@aclu.org
bstull@aclu.org
checker@aclu.org
dleboeuf@aclu.org

David C. Fathi**
Lauren Kuhlik (D.C. Bar No. 888324779)
ACLU National Prison Project
915 15th Street, N.W., 7th Floor
Washington, D.C. 20005
Tel: (202) 548-6603
dfathi@aclu.org
lkuhlik@aclu.org

Anjana Samant*
ACLU Women's Rights Project
125 Broad Street
New York, NY 10004
Tel: (646) 885-8341
asamant@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation of the
District of Columbia
915 15th Street, N.W. – 2nd Floor
Washington, D.C. 20005
Tel: (202) 601-4266
aspitzer@acludc.org

*Pro hac vice application forthcoming
**Not admitted in DC; practice limited to federal
courts